UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
|  | * |  |
|  | * |  |
|  | * |  |
| PAUL PADULA, JOSEPH PADULA, and | * |  |
| SHARON BELLENIS, | * |  |
|  | * |  |
| Plaintiffs, | * |  |
|  | * |  |
| v. | * | Civil Action No. 1:19-cv-11666-ADB |
|  | * |  |
| FREEDOM MORTGAGE CORPORATION, | * |  |
|  | * |  |
| Defendant. | * |  |
|  | * |  |
|  | * |  |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION TO STRIKE

BURROUGHS, D.J.

This case, which concerns the sale of a foreclosed property, was filed by Plaintiffs Paul Padula and Joseph Padula (collectively, "the Padulas") and the home's owner, Sharon Bellenis ("Bellenis" and, collectively with the Padulas, the "Plaintiffs"), who allege that the property was wrongfully sold because Freedom Mortgage Corporation ("Defendant") violated the terms of an agreement with Plaintiffs by selling the home at auction, after allegedly promising that the auction would be postponed. [ECF No. 13 ("Am. Compl.")].

Presently before the Court is Defendant's motion to dismiss pursuant to Massachusetts General Laws ch. 184, § 15(c), which allows a party to move to dismiss a frivolous *lis pendens* action. [ECF No. 15]. Because Plaintiffs have not demonstrated that Defendant violated an agreement to postpone the auction of the property at issue, the motion, [ECF No. 15], is GRANTED. Additionally, because Defendant's reply brief does not raise any arguments that

were not originally presented in its memorandum in support of the motion to dismiss, Plaintiffs'

motion to strike, [ECF No. 22], is <u>DENIED</u>.

## I.      FACTUAL BACKGROUND

This case concerns the foreclosure sale of property located at 22 Sunnyplain Avenue in

Weymouth, Massachusetts (the "Property").  [Am. Compl. ¶ 7].  Bellenis owned the Property

under a Federal Housing Authority ("FHA") mortgage, which she gave to Mortgage Electronic

Registration Systems, Inc., as nominee for Radius Financial Group, Inc. on September 28, 2011.

[ECF No. 16-1 at 1–10].  Eventually, after a series of assignments, the mortgage was assigned to

Defendant on June 15, 2018.  [<u>Id.</u> at 12, 16].

Over time, Bellenis fell behind on her mortgage payments.  [Am. Compl. ¶ 11].  On June

18, 2019, Defendant served Bellenis with notice of its intention to foreclose on the Property on

July 15, 2019.  [ECF No. 16-1 at 11].  Additionally, Defendant published a notice of the

foreclosure sale of the property in the <u>Weymouth News</u> on June 19, June 26, and July 3, 2019.

[<u>Id.</u> at 78].  On June 28, 2018, Defendant referred Bellenis to its counsel, Doonan Graves &

Langoria, LLC ("DG&L").  [ECF No. 16 at 2].

There is a dispute of fact concerning how Defendant handled Bellenis' default.  Plaintiff

alleges that Defendant never reviewed Bellenis' mortgage to determine if there were ways to

mitigate the losses from her missed payments, [Am. Compl. ¶ 12], or made a reasonable effort to

have a face-to-face meeting with Bellenis before foreclosing on the Property, [<u>id.</u> ¶ 13].

Defendant maintains that one of its agents visited the Property on February 9, 2018, but that no

one answered the door.  [ECF No. 15-1 at 15; ECF No. 17-1 at 24].  On March 13, 2018,

Defendant sent Bellenis a 90-day right to cure letter, which informed her of the opportunity to

meet to discuss her mortgage.  [ECF No. 15-1 at 15; ECF No. 17-1 at 26, 28, 51].  Thereafter,

Defendant sent a notice informing Bellenis of an event in partnership with several nonprofits on September 22, 2018, where she could discuss options to avoid foreclosure.  [ECF No. 17-1 at 72].

In the meantime, Bellenis entered into discussions with the Padulas about selling the Property to them.  [Am. Compl. ¶ 14].  Plaintiffs allege that they reached an agreement for a sale that would have cleared Defendant's mortgage on the Property.  [Id. ¶ 15].

On July 11, 2019, the Padulas' counsel sent DG&L a fax that included an unexecuted offer from the Padulas to purchase the Property for $286,809.61, which DG&L forwarded to Defendant.  [ECF No. 16-1 at 79–81, 82–85].  Defendant responded, telling DG&L that the offer "[wa]s not an agreement," but rather "an unsigned offer to purchase" and that to consider postponing the foreclosure sale, Defendant required "an executed contract and proof of funds . . . ."  [Id. at 86].  DG&L sent the information along to the Padulas' attorney and notified the Padulas that Defendant would only postpone the sale and consider "the [purchase and sale] once [it was] executed and proof of funds [we]re available . . . ."  [Id. at 87].  In response, the Padulas provided DG&L with an additional copy of the offer, which was signed by the Padulas, [id. at 88–90], along with proof of the purchase funds, [id. at 91].[1]  DG&L informed the Padulas' attorney that it had emailed the offer to Defendant and would be in touch as soon as Defendant responded.  [Id. at 93]; see also [id. at 92 (providing the email from DG&L to Defendant)].

On July 12, 2019, one day after the Padulas' attorney sent DG&L the fax with the unexecuted offer from the Padulas to purchase the Property, the Padulas' attorney emailed DG&L to "confirm[] that Monday's foreclosure auction . . . ha[d] been postponed" and to verify

---

[1] Plaintiffs maintain that they provided a fully signed and executed copy of the purchase and sale agreement, [ECF No. 18 at 5], and have provided a copy of the agreement signed by both Bellenis and the Padulas, [ECF No. 18-1 at 14].

that he had the necessary funds deposited in his escrow account. [ECF No. 16-1 at 94]. DG&L responded that it "[j]ust reached out to [Defendant] again regarding the postpone[ment]" and that it would let the Padulas' attorney know "[a]s soon as" Defendant responded. [Id. at 95]. DG&L never confirmed that the auction had been postponed.

The Property was sold at auction on July 15, 2019 for $266,000.00. [Am. Compl. ¶ 22; ECF No. 15-1 at 7]. The Padulas did not attend the foreclosure sale because they believed that it had been postponed. [ECF No. 18 at 4]. The Padulas' attorney emailed DG&L to say that the Padulas had requested that he file a *lis pendens* to encumber the title to the Property, and that they were still prepared to purchase the property from Defendant, Bellenis, or the third party who had purchased the Property at the auction. [ECF No. 16-1 at 96]. On July 20, 2019, the Padulas' attorney sent DG&L a demand pursuant to Chapter 93A. [ECF No. 16 ¶ 23]. The Padulas' attorney then sent DG&L another email in which he said that if Defendant or the third-party purchaser did not agree to sell the home to the Padulas, then "your buyer has to deal with a law suit and then possibly lives [sic] next door to me." [Id. ¶ 24; ECF No. 16-1 at 100]. Defendant offered the Padulas a settlement in response to the 93A demand, which their attorney rejected. [ECF No. 16 ¶¶ 25–26; ECF No. 16-1 at 101–08]. Bellenis then served Defendant with a 93A demand letter, and Defendant responded. [ECF No. 16 ¶¶ 27–28; ECF No. 16-1 at 109–16].

## II.     PROCEDURAL HISTORY

Plaintiffs originally filed this action in Norfolk County Superior Court on July 31, 2019. [ECF No. 1-3 at 3]. Defendant removed to federal court on August 2, 2019, [ECF No. 1], and Plaintiffs filed an amended complaint on September 19, 2019, [Am. Compl.].

Defendant moved to dismiss the case on October 10, 2019, [ECF No. 15], and Plaintiffs opposed, [ECF No. 18]. With leave from the Court, [ECF No. 20], Defendant filed a reply to

Plaintiffs' opposition on November 13, 2019, [ECF No. 21].  Plaintiffs filed a motion to strike

the reply, arguing that it advanced new arguments that were not originally raised in Defendant's

memorandum in support of its motion to dismiss.  [ECF No. 22].  Defendant opposed the motion

to strike.  [ECF No. 23].

III.      **LEGAL STANDARD**

Under Massachusetts General Laws chapter 184, § 15(c), the Court should grant a motion

to dismiss a *lis pendens* action "if the [C]ourt finds that the action or claim is frivolous because

(1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law;

or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute

of frauds."  McCann v. McGowan, 883 N.E.2d 980, 985 (Mass. App. Ct. 2008).  The Court may

consider verified pleadings and affidavits in making its decision.  Mass. Gen. Laws ch. 184,

§ 15(c).

In reviewing a special motion to dismiss under § 15(c), the Court applies the same

standard as for a motion to dismiss.  See Tak Lo v. JPMorgan Chase Bank, N.A., No. 15-cv-

40165, 2016 WL 3017383, at *2 (D. Mass. May 24, 2016).  To survive a motion to dismiss for

failure to state a claim, the alleged facts must be sufficient "to state a claim to relief that is

plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).  "To cross the

plausibility threshold a claim does not need to be probable, but it must give rise to more than a

mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012)

(citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  A party seeking a *lis pendens* must

certify that "no material facts have been omitted" from the complaint.  McCann, 883 N.E.2d at

985.

If the Court grants the motion to dismiss, "it shall award the moving party costs and reasonable attorneys fees, including those incurred for the special motion, any motion to dissolve the memorandum of *lis pendens*, and any related discovery." Mass. Gen. Laws ch. 184, § 15(c). "The award of fees is mandatory." <u>Rudnick v. QBJKL, LLC</u>, No. 17-P-490, 2018 WL 2992987, at *3 (Mass. App. Ct. June 15, 2018) (citing § 15(c)).

## IV.   DISCUSSION

The Amended Complaint asserts a violation of Chapter 93A (Count I), breach of contract based on the alleged agreement to postpone the foreclosure sale (Count II), promissory estoppel based on that same alleged agreement (Count III), wrongful foreclosure (Count V), breach of the covenant of good faith and reasonable diligence (Count VI), breach of the covenant of good faith and fair dealing (Count VII), and seeks a declaratory judgment that the foreclosure sale is void due to Defendant's alleged failure to follow FHA regulations (Count IV). [Am. Compl. ¶¶ 23–58].

All but one of the counts in the complaint, Count IV, rest on the premise that Defendant entered into an agreement with Plaintiffs to postpone the foreclosure sale. <u>See</u> Count I [<u>id.</u> ¶ 25 ("Defendant committed unfair and deceptive business practices by foreclosing Plaintiffs' [sic] home after its agents expressly represented that no foreclosure would occur.")]; Count II [<u>id.</u> ¶ 30 ("Plaintiffs and Defendant entered into an agreement for the postponement of the foreclosure sale. Plaintiffs agreed to continue their efforts to sell the property and payoff [sic] the existing mortgage in exchange for Defendant postponing the sale.")]; Count III [<u>id.</u> ¶¶ 38–40 ("Defendants [sic] represented to Plaintiffs that no foreclosure sale of the home would occur. Based on this promise, Plaintiffs continued their efforts to finalize the sale of the property. Injustice can only be avoided by an enforcement of this promise, through a recission of the

underlining [sic] foreclosure sale.")]; Count V [id. ¶ 48 ("Defendant wrongfully foreclosed Plaintiff Bellenis's home, by proceeding with a foreclosure sale after it agreed not to do so.")]; Count VI [id. ¶ 53 ("Defendant breached [its duty to act in good faith and use reasonable diligence] by foreclosing Plaintiff's home after it expressly represented that no foreclosure would occur.")]; Count VII [id. ¶ 57 ("Defendant breached [its duty under the covenant of good faith and fair dealing] [by] proceeding with a foreclosure sale after it expressly stated that it would not do so.")].

Because Defendant never agreed to postpone the foreclosure sale, Counts II and III, which substantively rely on that allegation, are dismissed with prejudice.  Count IV is likewise dismissed with prejudice because the relevant HUD regulations do not provide a private cause of action.

Counts I, V, VI, and VII allege that Defendant acted in bad faith by failing to postpone the foreclosure sale after it agreed to do so.  Again, where Defendant never agreed to postpone the foreclosure sale, those counts are also dismissed.  Because Bellenis has further asserted that Defendant acted in bad faith by failing to postpone the sale when there was a valid offer, however, these counts are dismissed without prejudice.

### A.    Count IV: Plaintiffs Cannot Attempt to Void the Foreclosure Sale Based on Defendant's Alleged Failure to Follow HUD Regulations

In Count IV, Plaintiffs allege that Defendant failed to comply with certain pre-foreclosure requirements as required by the fact that Bellenis had an FHA mortgage loan.  [Am. Compl. ¶¶ 41–46].  Specifically, Plaintiffs allege that Defendant failed to pursue possible mitigation opportunities in violation of HUD regulations.  [Id.].  Mortgagees are required to "evaluate on a monthly basis all of the loss mitigation techniques provided at § 203.501" before a mortgagor fails to pay four monthly installments of its mortgage.  24 C.F.R. § 203.605.  Additionally, under

24 C.F.R. § 203.604, a "mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid."

          1.       The Motion to Strike

As a preliminary matter, Plaintiffs argue that the Court cannot consider arguments raised in Defendant's reply to Plaintiffs' opposition because Defendant raises new arguments that were not included in its memorandum in support of the motion to dismiss. [ECF No. 22 at 2]. Defendant maintains that the arguments raised in its reply are consistent with what it originally argued in the motion to dismiss because Defendant's records "indicate that Freedom's agent visited the Property in [an] attempt to make contact with the Mortgagors, which is all that is required under Section 203.604(d). This is precisely the argument advanced in both the Memorandum of Law filed in support of Freedom's Motion to Dismiss and Freedom's Reply Brief." [ECF No. 23 at 4].

"The purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum." Noonan v. Wonderland Greyhound Park Realty LLC, 723 F. Supp. 2d 298, 349 (D. Mass. 2010). Therefore, "theories offered for the first time in the reply brief are not preserved." Wills v. Brown Univ., 184 F.3d 20, 27 (1st Cir. 1999) (emphasis omitted); see also Napert v. Gov. Emp. Ins. Co., No. 13-cv-10530, 2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013) ("Where, as here, a moving party raises an argument for the first time in a reply brief, that argument is waived.").

Defendant here, however, does not advance a new argument in its reply brief. Defendant previously argued in its memorandum in support of the motion to dismiss that "Freedom's agent visited the Property on February 9, 2018, in an attempt to make contact with the Mortgagors . . . ." [ECF No. 15-1 at 15]. After Plaintiffs argued that there was a dispute of fact over the

purpose of the property visit, Defendant clarified that the regulation does not require that the

person visit the property with the intention of conducting the face-to-face meeting, but only that,

in addition to at least one letter, "a reasonable effort to arrange a face-to-face meeting shall

include, . . . at least one trip to see the mortgagor at the mortgaged property . . . ."  24 C.F.R.

§ 203.604; [ECF No. 21 at 8–10].  The argument advanced in reply was therefore not a new

argument, but rather a further explanation of the argument Defendant originally raised in its

memorandum in support of the motion to dismiss.

     The motion to strike, [ECF No. 22], is therefore <u>DENIED</u>.  The Court notes, however,

that, as more fully set forth below, the resolution of the motion to strike has no bearing on the

Court's decision as to the viability of Count IV.  Because Plaintiffs do not have a private cause

of action under the HUD regulations, Plaintiffs' arguments concerning the purpose of the

property visit are of no consequence.

        2.     <u>Plaintiffs Fail to Demonstrate That They Are Entitled to Relief Due to
Defendant's Failure to Follow HUD Regulations</u>

     Defendant argues that any repercussions associated with failing to follow the necessary

regulations could result in financial penalties, but would not void the foreclosure sale.  [ECF No.

15-1 at 14].  24 C.F.R. § 203.501 makes clear that mortgagees are required to engage in effective

loss mitigation in order to ensure the smallest possible financial loss to HUD.  24 C.F.R.

§ 203.501 ("Mortgagees must consider the comparative effects of their elective servicing actions,

and must take those appropriate actions which can reasonably be expected to generate the

smallest financial loss to the Department.").  If a mortgagee fails to engage in such loss

mitigation, then it may be subject to a civil money penalty.  24 C.F.R. § 203.605(c) ("A

mortgagee that is found to have failed to engage in loss mitigation as required under paragraph

(a) of this section shall be liable for a civil money penalty as provided in § 30.35(c) of this

title."). The penalty for failing to mitigate the loss is three times the amount of mortgage insurance benefits that the mortgagee claims for that mortgage.   24 C.F.R. § 30.35(c)(2).

Thus, the regulatory framework makes clear that the intended consequences for a mortgagee's alleged failure to mitigate would be a civil penalty imposed by HUD.  There is no support for Plaintiff's requested relief "that the foreclosure sale against the home" be declared "void."  [Am. Compl. ¶ 46].  The Court's decision is further supported by a number of other courts which have determined that, although a mortgagee's failure to follow certain regulations may provide an affirmative defense in a foreclosure proceeding, the regulations do not create a private cause of action.  See, e.g., Harrell v. Wells Fargo Bank, N.A., No. 19-cv-01417, 2019 WL 7207490, at *10 (D.N.J. Dec. 27, 2019) ("To the extent [plaintiff] is arguing that the HUD regulations give her a private right of action, [plaintiff] does not claim that Congress granted an express right of action. . . .  The Court could not find any Third Circuit precedent, or any other caselaw [sic], addressing the issue.  Because [p]laintiff has not demonstrated that the cited HUD regulations provided her with a viable cause of action, . . . [the claim] is dismissed."); Modragon v. Bank of Am., N.A., No. 16-cv-02462, 2017 WL 4653021, at *2 (C.D. Cal. June 21, 2017) ("Neither the National Housing Act nor its implementing regulations (including 24 C.F.R. §§ 203.604 and 203.605) provide for a private right of action." (quoting Inman v. Suntrust Mortg., Inc., No. 10-cv-01031, 2010 WL 3516309, at *2 (E.D. Cal. Sept. 3, 2010))); Bables v. Citimortgage, Inc., No. 4:16-cv-00104, 2016 WL 1450201, at *2 (E.D. Tex. Apr. 13, 2016) ("Plaintiff has failed to show how his loan is subject to the HUD regulation or that any private cause of action arises out of the C.F.R. provisions cited in his petition."); Bank of Am., N.A. v. Dennis, No. 12-cv-11821, 2013 WL 1212602, at *3 (E.D. Mich. Mar. 25, 2013) (noting that plaintiffs "appear[ed] to acknowledge that there is no private cause of action" for failing to

mitigate as required under 24 C.F.R. § 203.605 "because they claim[ed] the alleged HUD

violations constitute[d] an 'affirmative defense' to foreclosure"); see also Hayes v. Bank of Am.,

N.A., No. 3:19-cv-02929, 2020 WL 3065936, at *4 (N.D. Tex. May 15, 2020) ("While HUD

regulations do not impose an independent legal duty on a mortgagee to a mortgagor, a violation

of HUD regulations can form the basis of a breach of contract claim if the parties expressly

incorporate the regulations into their contract.").

Even if Plaintiffs could bring such an action, however, Defendant claims that it did in fact

attempt to engage in the requisite face-to-face meeting with Bellenis and her co-mortgagor prior

to foreclosure as required by 24 CFR § 203.604.  [ECF No. 15-1 at 15].  Defendant visited the

Property on February 9, 2018, but Bellenis did not answer the door.  [ECF No. 17-1 at 24].  On

March 13, 2018, Defendant sent Bellenis a letter informing her of the opportunity to meet to

discuss her mortgage.  [ECF No. 17-1 at 28, 51].  Thereafter, Defendant sent a notice informing

Bellenis and her co-mortgagor of a free event in partnership with several nonprofits to discuss

options available to them.  [ECF No. 17-1 at 72 ("As a customer of Freedom Mortgage

Corporation, we would like to inform you that we will be participating in the event.  While there,

we hope to meet with our customers and discuss the customized solutions we have available to

help customers resolve account delinquency and avoid foreclosure. . . .  If you are unable to

attend the event, please contact our Customer Care Department to learn more about how we can

assist you.")].

Plaintiffs argue that there is a dispute of fact over whether the person who visited the

home on February 9, 2018 had the authority to propose and accept reasonable payment plans, but

24 C.F.R. § 203.604 requires only that the mortgagor "have a face-to-face interview with the

mortgagor, or *make a reasonable effort* to arrange such a meeting . . . ."  24 C.F.R. § 203.604

(emphasis added).  See, e.g., Donahue v. Fed. Nat'l Mortg. Assoc., No. 17-cv-10635, 2019 WL

2176939, at *6 (D. Mass. May 20, 2019) (rejecting the argument that "compliance with the

timely trip requirement of § 203.604(d) requires that the representative who makes the trip must

be prepared to conduct the face-to-face meeting" because the argument "ignores the clear

language of § 203.604(d), which states that the trip is 'to arrange' the meeting, not to conduct it

in the  moment").  Therefore, even if Plaintiffs had a private right of action against Defendant for

its alleged failure to follow the HUD regulations, Plaintiffs have not shown that Defendant failed

to make a reasonable effort to arrange the face-to-face meeting, given the visit to the property

and the subsequent mailings.

### B.    Defendant Did Not Agree to Postpone the Foreclosure Auction

In Counts II and III, Bellenis and the Padulas bring breach-of-contract claims based on

Defendant's alleged agreement to postpone the foreclosure sale.  In Count II, Plaintiffs allege

that they suffered damages by relying on Defendant's representation that the foreclosure sale had

been postponed, when in fact, it had not and the home was sold at auction.  [Am. Compl. ¶¶ 29–

35].  In Count III, Plaintiffs bring a claim of promissory estoppel, claiming that because

Defendant "represented to Plaintiffs that no foreclosure sale would occur," the Plaintiffs

"continued their efforts to finalize the sale of the property."  [Id. ¶¶ 36–40].  Defendant argues

that it "never expressly or impliedly agreed to postpone the July 15, 2019 foreclosure sale of the

Property."  [ECF No. 15-1 at 11].

A plaintiff bears the burden of proving that there was an "agreement between the parties

on the material terms of that contract, and [that] the parties . . . ha[d] a present intention to be

bound by that agreement."  See Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703

(Mass. 2000); see also Moore v. LA-Z-Boy, Inc., 639 F. Supp. 2d 136, 140 (D. Mass. 2009)

(explaining that plaintiffs bear the burden of proof as to the existence of a contract (citing

Canney v. New England Tel. & Tel. Co., 228 N.E.2d 723, 727 (Mass. 1967))).  "All the essential

terms of a contract must be [sufficiently] definite and certain so that the intention of the parties

may be discovered, the nature and extent of their obligations ascertained, and their rights

determined."  Moore, 639 F. Supp. 2d at 140 (alteration in original) (quoting Cygan v.

Megathlin, 96 N.E.2d 702, 703 (Mass. 1951)).  Generally, binding contracts may be either

written or oral.  Beauregard v. Meldon, No. 19-cv-10342, 2019 WL 6877185, at *3 (D. Mass.

Dec. 17, 2019).  In certain circumstances, however, a writing signed by the parties is required for

the contract to be enforceable.  See Mass. Gen. Laws ch. 259, § 1.

"[U]nder the Statute of Frauds, an agreement involving the sale of real property is

unenforceable unless evidenced by a writing signed by the party to be charged."  Beauregard,

2019 WL 6877185, at *3 (citing Mass. Gen. Laws ch. 259, § 1); see also Cellucci v. Sun Oil Co.,

320 N.E.2d 919, 923 (Mass. App. Ct. 1974) ("[I]t is the general rule that the Statute of Frauds

bars the enforcement of a contract for the sale of land unless it 'is in writing and signed by the

party to be charged therewith or by some person thereunto by him lawfully authorized.'"

(quoting Mass. Gen. Laws ch. 259, § 1)).

Defendant claims that it never agreed or represented that it would postpone the July 15,

2019 foreclosure sale in light of the Padulas' offer.  [ECF No. 15-1 at 5].  Defendant's attorney,

DG&L, informed the Padulas' attorney that Defendant would "only entertain the [purchase and

sale] once executed and proof of funds [we]re available before they w[ould] postpone the sale

scheduled for Monday at 10 am."  [ECF No. 16-1 at 87].  When the Padulas' attorney then

contacted DG&L to inquire about the status of their postponement request, DG&L responded

that the foreclosure sale had not been postponed, but that they would request an update from

Defendant to see if it had decided to postpone the sale.  [Id. at 94–95].

DG&L never told the Padulas' attorney that the foreclosure sale had been postponed. Instead, DG&L represented only that they had reached out to Defendant regarding the postponement but made no representation as to whether the sale had in fact been postponed.  [Id. at 95 ("Just reached out to them again regarding the postpone[ment].  As soon as I hear I will let you know.")].  Plaintiffs argue that DG&L's response "appears to acknowledge that a postponement would occur and would transmit notice of this agreement to Defendant."  [ECF No. 18 at 8].

On the record before the Court, Plaintiffs have failed to establish that they entered into an agreement with the Defendant to postpone the foreclosure sale.  Rather, by telling the Padulas' counsel that Defendant would "only entertain" an executed agreement with proof of funds, [ECF No. 16-1 at 87], DG&L was telling Plaintiffs what they had to do to effect an offer that Defendant would consider.[2]  The Padulas then attempted to make an "offer to purchase" that would be acceptable to Defendant.  [Id. at 88].  A DG&L attorney sent this subsequent offer to Defendant and told Plaintiffs that DG&L would inform Plaintiffs "as soon as" she heard something.  [Id. at 95].  At no time did Defendant or DG&L tell Plaintiffs that the foreclosure sale had in fact been postponed.  Therefore, there was no valid agreement that Defendant could have breached by going forward with the sale.  See, e.g., Rudnick, 2018 WL 2992987, at *2 ("The plaintiffs were provided with an unsigned letter, addressed to the defendants, which (if

---

[2] The Court notes that there is a dispute of fact concerning whether the Purchase and Sale offer that the Padulas' counsel sent Defendant's counsel was fully executed.  The Defendant maintains that it never received a fully executed purchase and sale offer because the copy sent by the Padulas' counsel did not include Bellenis' signature, [ECF No. 15-1 at 4–5], and has provided the Court with copies of the offer it received, [ECF No. 16-1 at 88–90; ECF No. 17-1 at 100–102].  Plaintiffs argue that they provided a fully executed purchase and sale offer, [ECF No. 18 at 5 n.5], and have provided a copy of a purchase and sale offer, which includes Bellenis' signature, [ECF No. 18-1 at 12–14].

signed and returned by the plaintiffs) would constitute an offer to purchase the real estate.  When

the plaintiffs signed the letter, the offer was made.  When the sellers' attorney provided the letter

he solicited an offer.").

Having determined that there was no agreement, the Court finds that Plaintiffs have failed

to allege facts sufficient to establish that Defendant breached a contract by going forward with

the foreclosure sale.  Counts II and III are therefore dismissed with prejudice.

### C.       Defendant May Have Violated Its Duty to Bellenis By Failing to Consider the Offer

To the extent that Bellenis' claims are based on the same alleged agreement to postpone

the foreclosure sale as the claims brought by the Padulas, those claims, as more fully set forth

above, are dismissed.

Even in the absence of an agreement to postpone the foreclosure sale, however, Bellenis

potentially could have brought claims for Defendant's refusal to consider the Padulas' offer and

the resulting foreclosure sale.  For example, in Count I, Plaintiffs allege that Defendant

"committed unfair and deceptive business practices" in violation of Chapter 93A "by foreclosing

Plaintiffs' [sic] home after its agent expressly represented that no foreclosure would occur."

[Am. Compl. ¶ 25].  This claim fails because it is predicated on the alleged agreement that no

foreclosure sale would occur.

That said, Chapter 93A protects consumers from "unfair or deceptive acts or practices in

the conduct of any trade or commerce . . . ."  Mass. Gen. Laws ch. 93A, §2.  With regard to a

foreclosure, "[i]t is not enough in the context of Chapter 93A for [the plaintiff] to allege that

defendants foreclosed on her property in violation of Massachusetts foreclosure law.  Something

more is required for [the plaintiff] to establish that the violation 'has an extraordinary quality that

gives it the rancid flavor[s] of unfairness [and deceptiveness].'"  Juárez v. Select Portfolio

Servicing., Inc., 708 F.3d 269, 281 (1st Cir. 2013) (quoting Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (alterations in original)).

Generally, "the mere relationship between mortgage holder or servicer and borrower does not give rise to a fiduciary duty to the latter." HMC Assets, LLC v. Conley, No. 14-cv-10321, 2016 WL 4443152, at *29 (D. Mass. Aug. 22, 2016); see also MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013) ("The relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law."). However, "a mortgagee does owe a fiduciary duty to a mortgagor 'to refrain from committing fraud, bad faith or failing to use reasonable diligence . . . in the context of a foreclosure sale.'" Andersen v. Lasalle Bank Nat'l Ass'n, No. 15-cv-30107, 2016 WL 3093375, at *5 (D. Mass. June 1, 2016) (quoting Pearson v. United States, 831 F. Supp. 2d 514, 519–20 (D. Mass. 2011)). The mortgagee's "duty at common law [is] to protect the interests of the mortgagor in exercising a power of sale in a mortgage," which is usually accomplished by "mak[ing] reasonable efforts to sell the property for the highest value possible." MacKenzie, 738 F.3d at 493.

"[O]nce foreclosure has commenced, the mortgagee must consider any buyers that the mortgagor brings to its attention." Figueroa v. Fed. Nat'l Mortg. Ass'n, No. 12-cv-11290, 2013 WL 2244348, at *3 (D. Mass. May 20, 2013). "[I]n the most favorable conditions—where a buyer ha[s] legally bound himself to purchase the property, not contingent on securing financing, and [will] pay a price sufficient to give the mortgagee full recovery," state-court cases as well as cases from this district may imply that a "mortgagee's failure to take the higher offer or at least put off the sale might constitute bad faith." Sunningdale Ventures, Inc. v. Martin, No. 13-cv-12512, 2018 WL 1582554, at *6 (D. Mass. Mar. 31, 2018).

16

In <u>Snowden v. Chase Manhattan Mortgage Corp.</u>, the Superior Court of Massachusetts found that the defendant mortgagee breached its duty of good faith and reasonable diligence when the mortgagee did not postpone the scheduled foreclosure auction after the plaintiff found an interested buyer and requested that the mortgagee postpone the scheduled foreclosure auction. No. 03-0001B, 2003 WL 22519518, at *1–2, 5 (Mass. Sup. Ct. Nov. 5, 2003).  After the mortgagee refused to postpone and went forward with the sale as scheduled, the mortgagee sold the property for less than what had been offered by the plaintiff's potential buyer.  <u>Id.</u> at *1–2. The court found that the mortgagee's refusal to postpone the sale constituted an unfair or deceptive act in violation of Chapter 93A.  <u>Id.</u> at *5.  The court rested its decision on the following facts:

> (1) that a buyer for the property had been found by the plaintiffs, (2) that the prospective buyer had made a legally binding commitment to purchase the property, (3) that the buyer had not made the offer subject to the condition that he secure financing, (4) that the buyer had a solid commitment for the sale of his own home to another person who had secured financing, and (5) that the buyer was willing to pay a price for the plaintiffs' home that would result in a full recovery of all the money due to the mortgagee, including its costs, under the note and mortgage.

<u>Id.</u> at *4.

Similarly, in <u>Zagarella v. Caliber Home Loans</u>, a court in this district found that a mortgagee breached its duty to exercise good faith and reasonable diligence by failing to postpone a foreclosure sale when the plaintiff had secured a willing buyer who would purchase the property at a much better price than what was eventually secured at auction and provided a purchase and sale agreement.  No. 18-cv-12414, 2019 WL 3021261, at *3–4, 8 (D. Mass. Jun 7, 2019).  The facts of that case were strikingly similar to those presently before the Court.  The plaintiff's attorney contacted the mortgagee's counsel, which was also DG&L, to present the proposed purchase of the property.  <u>Id.</u> at *3.  DG&L informed the plaintiff that it had contacted

17

the mortgagee, who required "an executed [purchase and sale agreement] and Proof of Funds to . . . approve any postponement." Id. The plaintiff responded that it was prepared to pay cash and the information was sent to the mortgagee. Id. When a day passed, DG&L informed the plaintiff that there was still no response from the mortgagee, but that it "w[ould] let [plaintiff's counsel] know" when it heard anything. Id. at *4. The plaintiff never heard anything further and the auction went forward. Id. The court found that "[t]he complaint allege[d] conduct by defendants that [wa]s similar to the conduct of the mortgagee in Snowden, which [wa]s sufficient to support a plausible finding that defendants breached the duty to act in good faith and use reasonable diligence when conducting the foreclosure sale." Id. at *8.

If, however, the proposed buyer only offers a sale contingent on financing or otherwise fails to satisfy the requirements of an acceptable offer, then the failure to postpone the foreclosure sale is insufficient to establish a claim under Chapter 93A. Sunningdale, 2018 WL 1582554, at *6 (finding that a mortgagor did not violate Chapter 93A insofar as it refused to postpone a foreclosure sale when faced with repeated sale offers that amounted to attempts to forestall foreclosure, rather than being bona fide offers); see also Figueroa, 2013 WL 2244348, at *3 (explaining that Snowden "stands only for the proposition that once foreclosure has commenced, the mortgagee must consider any buyers that the mortgagor brings to its attention"). If Bellenis could state such a claim, the issue of whether Defendant agreed to postpone the foreclosure auction would not be dispositive. Rather, if Bellenis had in fact secured an interested buyer who could pay more than what was offered at auction, and Defendant nonetheless proceeded with the foreclosure auction, Defendant may have violated its duty to act with reasonable diligence and to refrain from acting in bad faith. See, e.g., Snowden, 2003 WL 22519518, at *2–5 (finding that mortgagee violated its duty of good faith, diligence, and fair

dealing and awarding plaintiff summary judgment on its Chapter 93A claim sua sponte); Figueroa, 2013 WL 2244348, at *3 (explaining that a mortgagee breaches its duty of good faith and reasonable diligence "by refusing to postpone the scheduled auction to accommodate a willing and financially capable buyer"); see also Sunningdale, 2018 WL 1582554, at *6 (explaining that "when there is such a prospective purchaser shown, a mortgagee's failure to take a higher offer or at least put off the sale might constitute bad faith").

Although it is conceivable that a complaint that alleged harm based on Defendant's failure to postpone the auction and consider the sale offer could perhaps survive a motion to dismiss, the complaint at issue here instead relies solely on the already discredited agreement to postpone the foreclosure sale.  See [Am. Compl. ¶ 25 ("Defendant committed unfair and deceptive business practices by foreclosing Plaintiffs' home [sic] after its agent expressly represented that no foreclosure would occur."); id. ¶ 48 ("Defendant wrongfully foreclosed Plaintiff Bellenis's home, by proceeding with a foreclosure sale after it agreed not to do so."); id. ¶ 53 (claiming that Defendant breached the covenant of good faith and reasonable diligence "by foreclosing Plaintiff's home after it expressly represented that no foreclosure would occur"); id. ¶ 57 (alleging that Defendant breached the covenant of good faith and fair dealing by "proceeding with a foreclosure sale after it expressly stated that it would not do so")].  Therefore these claims fail as pled.  See, e.g., Beauregard, 2019 WL 6877185, at *4 (finding that, because the court dismissed the breach of contract claim, as there was no valid contract at issue, the plaintiff's claims of breach of the implied covenant of good faith and fair dealing and specific performance failed).

As a result, because the complaint is predicated on the allegation that Defendant agreed to postpone the foreclosure sale, Plaintiffs have failed to state a claim that Defendant acted in

bad faith by going forward with the foreclosure sale after agreeing not to do so.  Therefore, as the

complaint is currently drafted, Counts I, IV, V, VI, and VII are dismissed without prejudice.

Before deciding to attempt to amend the complaint, Plaintiffs should consider whether they can

otherwise satisfy the requirements of pleading bad faith and a violation of Chapter 93A as

articulated in <u>Snowden</u> and other cases at the motion to dismiss stage and beyond.

## V.      CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss, [ECF No. 15], is

<u>GRANTED</u>.  Counts II and III, which rely on the alleged agreement to postpone the foreclosure

sale, are dismissed with prejudice.  Count IV, which relies on HUD regulations that do not create

a private cause of action, is likewise dismissed with prejudice.  Counts I, V, VI, and VII, which

allege that Defendant acted in bad faith by not postponing the foreclosure sale, are dismissed

without prejudice.  Additionally, because Defendant's reply brief only raises arguments that it

had already presented in its memorandum in support of the motion to dismiss, the motion to

strike, [ECF No. 22], is <u>DENIED</u>.

**SO ORDERED.**

July 17, 2020                                                                         /s/ Allison D. Burroughs
                                                                                              ALLISON D. BURROUGHS
                                                                                              U.S. DISTRICT JUDGE